UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMUNITY ECONOMIC DEVELOPMENT CENTER OF SOUTHEASTERN MASSACHUSETTS,<br><br>Plaintiff,<br><br>vs.<br><br>INTERNAL REVENUE SERVICE, and SOCIAL SECURITY ADMINISTRATION,<br><br>Defendant. | Civil Action No.: 1:25-cv-11949 |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

1

Plaintiff Community Economic Development Center of Southeastern Massachusetts ("CEDC") respectfully submits this Memorandum of Points and Authorities in support of its Cross-Motion for Partial Summary Judgment and in opposition to the Social Security Administration's ("SSA") Motion to Dismiss or, in the Alternative, for Summary Judgment, ECF Doc. No. 24.

With this Memorandum and corresponding Cross-Motion, CEDC seeks a determination that the SSA has not meet its obligations under the Freedom of Information Act, 5 U.S.C. § 552, to conduct a reasonable search for the requested records and ordering the agency to conduct a such a search and produce the records.

## INTRODUCTION AND STATEMENT OF FACTS

On April 10, 2025, reports emerged on several actions that the SSA had taken with respect to noncitizens' data. *See* Alexandra Berzon, et al., <u>Social Security Lists Thousands of Migrants as Dead to Prompt Them to 'Self-Deport'</u>, N.Y. Times, April 10, 2025 (<u>See</u> Rosenthal Decl. Ex. A, ECF 27-1). Alongside news that the agency had mischaracterized living immigrants as dead to interfere with their financial lives, the article also described an agreement for the SSA to share data with U.S. Immigration and Customs Enforcement ("ICE"):

> In another previously unreported development, Mr. Dudek in February reached an agreement with the Department of Homeland Security that would provide the last known addresses of 98,000 people to Immigration and Customs Enforcement, the federal agency responsible for deporting undocumented immigrants, other documents and interviews show. Personal information held by Social Security had been closely guarded under previous administrations, according to 12 current and former officials who said the agency had not engaged in such widespread data sharing with immigration authorities before.

<u>Id.</u> This agreement mirrored efforts by Mr. Dudek, the then-Acting Commissioner of the SSA to improperly share SSA information with the so-called Department of Governmental Efficiency— efforts which are now subject to litigation which was recently subject to argument by the Fourth

2

Circuit, en banc. See Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin., 778 F. Supp. 3d 685 (D. Md. 2025) (discussing these efforts and granting preliminary injunction); but see Soc. Sec. Admin. v. Am. Fed'n of State, Cnty., & Mun. Emps., 145 S. Ct. 1626 (2025) (staying preliminary injunction pending appeal, C.A. 4 Case No. 25-1411).

CEDC is a membership-based organization that supports provides advice and support to low- and moderate-income residents of New Bedford, Massachusetts—including a large number of immigrant residents. Complaint, ECF Doc. No. 1 at 1, 3, ¶¶ 1, 10. Concerned about these reports, CEDC submitted a Freedom of Information Act ("FOIA") request to the SSA seeking "[t]he agreement or agreements reached during or after February 2025 between Social Security Administration and Immigration and Customs Enforcement (or Department of Homeland Security on behalf of Immigration and Customs Enforcement, as reported in the New York Times" and citing the Berzon article. ECF Doc. No. 1 at 4, ¶ 19; Exhibits, ECF Doc. No. 1-3 at 6. Although CEDC requested expedited processing of this request because of the urgency to inform the public about the agency's data-sharing plans, SSA never granted nor denied the expedited-processing request. Id. at 4, 5, ¶¶ 20, 22.

On July 7, 2025, CEDC filed this lawsuit, seeking the court's assistance to obtain the agreements from the SSA, as well as similar records relating to information-sharing between the Internal Revenue Service and ICE.[1] On August 11, shortly before the 30-day statutory deadline for the agency to respond to CEDC's complaint, the agency sent a letter denying the existence of any responsive records. Exhibit B, ECF Doc. No. 25-2; see 5 U.S.C. § 552(a)(4)(C) (setting a 30-day deadline). In September, the SSA produced a subsequent letter from SSA to ICE stating "that

---

[1] The Internal Revenue Service's deadline to respond to the complaint has been extended to January 15, 2026, per the parties' joint motion. ECF Doc. No. 23.

3

SSA will provide identity and location information for each alien upon ICE requests," it has maintained that it could not locate the agreement or agreements reported in the New York Times article, which CEDC requested. Exhibit A, ECF Doc. No. 25-1 at 4, ¶ 15; Exhibit C, ECF Doc. No. 25-3.

Shortly thereafter, CEDC proposed an approach that SSA could take to search adequately for records responsive to its initial request:

> Records of communications regarding requests for data and responses from ICE/[DHS][2] that was the subject of the earlier NY Times article cited in the FOIA request. These communications may exist as emails, memoranda, transcribed messages, letters, etc. and the NY Times article described the agreement as having come from former Acting Commissioner Dudek himself and it therefore may be located in his records of correspondence.

Rosenthal Decl, Ex. B, ECF Doc. No. 27-2. CEDC also provided a link to the article that would provide access without a newspaper subscription. Id. By its own admission, the SSA did not implement CEDC's search suggestions. ECF Doc. No. 25-3 at 2, ¶¶ 7-11.

On November 21, 2025, the SSA filed a motion to dismiss this lawsuit, or, in the alternative, for summary judgement. ECF Doc. No. 24. In support of its motion, the SSA submitted a declaration from an SSA employee within the FOIA-processing office, Sarah Reagan. ECF Doc. No. 25-1 at 1, 2, ¶¶ 1, 3. The Reagan Declaration states that the agency searched within only one office, the Office of Data Exchange ("ODE"), based on the conclusory assertion that ODE is "the sole component reasonably likely to possess responsive records to the request." Id. at 3, ¶¶ 7, 8. The Reagan Declaration further states that the ODE "reported conducting a search for agreements by searching its inventory of executed agreements between SSA and ICE or DHS for ICE, from February 1, 2025, to the search date. The [ODE] reported

---

[2] The email contained a typographical error. Undersigned counsel believes that the intended acronym was inferable from context, and SSA never asked for clarification.

4

that no other systems or locations would be reasonably likely to have responsive records." Id. at 3, ¶ 10.

Relying on this limited search, the SSA now argues that it has adequately responded to CEDC's FOIA request and that this lawsuit is moot. The SSA asks the Court to dismiss the case for lack of subject matter jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(1) or, in the alternative, grant summary judgment under Rule 56(a).

CEDC opposes the SSA's motion and now cross-moves for partial summary judgment, seeking a determination that the SSA has not met its obligations under FOIA to conduct a reasonable search for the requested records and ordering the agency to conduct such a search and produce the records.

**ARGUMENT**

I.  **Under FOIA, Regardless of Procedural Posture, the Agency Has the Burden to Establish That Its Actions Satisfied the Statute.**

Whether the Court resolves these cross-motions as a motion to dismiss for lack of jurisdiction or on summary-judgment, the same standard applies: "The burden is on the agency to demonstrate, not the requester to disprove, that the materials sought . . . have not been improperly withheld." U.S. Dep't of Just. v. Tax Analysts, 492 U.S. 136, 142 n.3 (1989). The Tax Analysts case arose on a motion to dismiss. Id. at 140–41; see also ECF Doc. No. 25 at 5. Moreover, while Tax Analysts did not address the adequacy of a FOIA search, other courts have explicitly noted that the rule applies in search-adequacy disputes. See Aguiar v. Drug Enf't Admin., 865 F.3d 730, 735 (D.C. Cir. 2017) (quoting Tax Analysts, 492 U.S. at 142 n.3); Pavlenko v. Dep't of Treasury Internal Revenue Serv., 356 F. App'x 293, 294 (11th Cir. 2009) (same).

5

II. **The SSA Has Not Shown That It Conducted an Adequate FOIA Search for Responsive Records.**

The SSA's declaration does not establish that the SSA made a good faith effort to conduct an adequate FOIA search. The adequacy of an agency's FOIA search "is judged by a standard of reasonableness." Mullane v. U.S. Dep't of Just., 113 F.4th 123, 130-31 (1st Cir. 2024) (quoting Church of Scientology Int'l v. U.S. Dep't of Just., 30 F.3d 224, 230 (1st Cir. 1994)). An agency must establish that it has "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Oleskey ex rel. Boumediene v. U.S. Dep't of Defense, 658 F. Supp. 2d 288, 294 (D. Mass. 2009) (quoting Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990)). When an agency seeks summary judgment based on its declaration of an adequate search, the FOIA requester can rebut that declaration by showing that the agency's search was not conducted in good faith. Maynard v. CIA, 986 F.2d 547, 563 (1st Cir. 1993).

First, the search described was unreasonably narrow in scope. Accordingly, CEDC is entitled to summary judgment that the agency is unreasonably withholding records, and an order for the agency to conduct a more appropriate search and produce responsive records.

Second, and in the alternative, the SSA's declaration provided insufficient detail regarding how SSA conducted the search. Without this information, there is no basis to conclude that the SSA conducted an adequate FOIA search for responsive records or provided enough information to enable CEDC to challenge the procedures utilized. Accordingly, even if the Court is not prepared to determine that the search was inadequate, the agency has not made a sufficient showing to justify a dismissal or grant of summary judgment in its favor. For this reason, the Court should deny the SSA's motion.

A.  <u>The Search Described in the SSA Declaration is Unreasonably Narrow in Scope.</u>

The Reagan Declaration describes a search that was unreasonably narrow in scope. The agency narrowed the nature of records sought from "agreements" to "executed agreements" without consulting CEDC or explanation. Yet the term "agreements" incorporates more than merely formal, executed agreements. As Black's Law Dictionary notes in its first definition, an agreement is any "mutual understanding between two or more persons about their relative rights and duties regarding past or future performances [or] a manifestation of mutual assent by two or more persons." AGREEMENT, Black's Law Dictionary (12th ed. 2024). Not every such agreement will take the form of a formal, executed document. Further, after finding no responsive records in ODE's inventory, the SSA simply stopped looking. The narrowness of SSA's search is underscored by the fact that CEDC communicated additional steps SSA could take to expand its search for responsive records. <u>See</u> ECF Doc. No. 27-2. Grounded in the description provided in the initial request, CEDC identified specific additional locations that may contain responsive records, such as the files or communications of former Acting Commissioner Dudek, and additional means of searching for responsive records. <u>Id.</u>

When an agency confines its search to only one filing system, it must provide some explanation as to why it is the only location reasonably likely to contain responsive records. The D.C. district court found a similar one-database search inadequate because "[the] vague, cursory description" provided by the agency "alone [did] not provide sufficient detail for the Court to determine whether [the database] was the only [agency] filing system likely to contain relevant information." <u>James v. U.S. Customs & Border Prot.</u>, 474 F. Supp. 2d 154, 159 (D.D.C. 2007). Like the agency in <u>James</u>, SSA's declaration did not explain why ODE's inventory of executed agreements is the exclusive source of responsive material or how SSA conducted the search.

7

Instead, SSA relies on a conclusory assertion that no other systems were "reasonably likely" to contain responsive records. Despite CEDC's recommendations to expand SSA's limited search, SSA refused to adjust or expand its search beyond ODE's inventory after finding no responsive records and provided no explanation for doing so.

Where an individual agency employee is referenced in a request, a reasonable search often requires the agency to contact that individual or review their records. See Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 328 (D.C. Cir. 1999) (finding a search inadequate for failure to contact an identified Coast Guard employee). It is particularly unreasonable when the agency "do[es] not adequately explain in briefing why they did not consider to pursue the "leads" listed by [CEDC]." Council on Am.-Islamic Rels.-Washington v. United States Customs & Border Prot., 492 F. Supp. 3d 1158, 1165 (W.D. Wash. 2020). The SSA's search was unreasonably limited in scope and thus, an inadequate FOIA search.

  B. The SSA's Declaration Provides Insufficient Detail to Establish an Adequate Search for Responsive Records.

Even if the Court is not prepared to determine that the SSA's search was inadequate, the SSA's declaration does not provide sufficient detail to prove that the search was adequate. To demonstrate that a FOIA search was adequate, the agency must present, at least, declarations that "are relatively detailed and nonconclusory and are submitted by responsible agency officials in good faith." Maynard, 986 F.2d at 559. Sufficient affidavits may include "the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." Oglesby, 920 F.2d at 68. Additional search details may include "the structure of the agency's file system, the scope of the search performed, and the method by which is was conducted." Sephton v. Fed. Bureau of Investigation, 365 F. Supp. 2d 91, 97 (D. Mass. 2005), aff'd, 442 F.3d 27 (1st Cir. 2006).

Here, the Reagan Declaration states, "[ODE] reported conducting a search for agreements by searching its inventory of executed agreements between SSA and ICE or DHS for ICE, from February 1, 2025, to the search date. [ODE] reported that no other systems or locations would be reasonably likely to have responsive records." ECF Doc. No. 25-1 at 3. The Reagan Declaration fails to describe in a detailed and nonconclusory manner how SSA conducted its search.

First, the Reagan Declaration offers nothing more than the conclusory assertion that ODE's "inventory of executed agreements" is the sole location where responsive records are "reasonably likely" to be found. ECF Doc. No. 25-1 at 3, ¶ 10. SSA does not provide any details regarding the structure of its filing system, how agreements are indexed, routed, or uploaded into ODE's inventory, or the personnel responsible for managing that system. *See* Maynard, 986 F.2d at 559 (making clear that an affidavit "should describe, at least generally" the agency's file system structure). Nor does SSA explain why other SSA offices, besides ODE, would not house agreements of the type CEDC requested. In Sephton, the court held that the FBI conducted an adequate FOIA search because, in part, its affidavits described how the FBI "catalogue[d] and maintain[ed] all pertinent information acquired in connection with its law enforcement responsibilities," described "the size of the file searched," and explained "the line by line search conducted by [its] Field Office of the files." 365 F. Supp. 2d at 97. Without details about SSA's file system structure, the agency cannot establish that its search was reasonably calculated to uncover responsive records.

Second, the declaration provides no details regarding the type or method of ODE's search. Although, SSA provided details regarding how a SSA FOIA request is routed to ODE, the declaration offers no details about ODE's "systematic approach to document location." Weisberg v. U.S. Dep't of Justice, 627 F.2d 365, 371 (D.C. Cir. 1980) (finding genuine issues existed as to

9

the thoroughness of the search because the agency's affidavits did not "denote which files were searched or by whom, [did] not reflect any systematic approach to document location, and [did] not provide information specific enough to enable [the plaintiff] to challenge the procedures utilized").

SSA provided insufficient detail to establish it conducted an adequate FOIA search. The Reagan Declaration lacks details regarding the SSA's file system structure and the specific type and method of its search. Because the agency instead relies on conclusory assertions, SSA has failed to demonstrate that its search was reasonably calculated to uncover all responsive records.[3] For this reason, whether or not this Court grants CEDC's Cross-Motion for Partial Summary Judgment, it should deny the SSA's Motion to Dismiss.

## **CONCLUSION**

For the reasons detailed above, Plaintiff CEDC respectfully requests that this Court determine that SSA's search was inadequate, grant partial summary judgment in its favor, retain jurisdiction over the case, and order SSA to search the files and communications of former Acting Commissioner Dudek, as well as any other locations reasonably likely to hold responsive records.

Further, CEDC respectfully requests that this Court deny the SSA's motion to dismiss or, in the alternative, for summary judgment.

---

[3] In a footnote, SSA insinuates that this FOIA litigation is somehow inappropriate, in light of CEDC's substantive lawsuit against the agency, regarding its information-sharing activities. ECF Doc. No. 25 at 9 n.2. This is not so. "[A] requester's right to obtain information is neither enhanced nor diminished because of its needs as a litigant." State of Maine v. U.S. Dep't of Interior, 298 F.3d 60, 66 (1st Cir. 2002) (internal quotation marks omitted).

Dated: December 5, 2025

   /s/ Joshua Rosenthal

Luz A. Arevalo
Angela Divaris
Greater Boston Legal Services
197 Friend Street
Boston, MA 02114
(617) 461-4944
LArevalo@gbls.org
ADivaris@gbls.org

Joshua Rosenthal *(Admitted Pro Hac Vice)*
Asian Law Caucus
55 Columbus Ave.
San Francisco, CA 94111
(628) 345-5628
jrosenthal@asianlawcaucus.org

*Counsel for Plaintiff Community Economic Development Center of Southeastern Massachusetts*

**CERTIFICATE OF SERVICE**

      I certify that this document is being filed through the Court's electronic filing system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF). Any counsel for other parties who are not registered participants are being served by first class mail.

      /s/ Joshua Rosenthal
      Joshua Rosenthal