UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

COMMUNITY ECONOMIC          *
DEVELOPMENT CENTER OF       *
SOUTHEASTERN MASSACHUSETTS, *
                            *
    Plaintiff,              *
                            *
    v.                      *        Civil Action No. 1:25-cv-11949-IT
                            *
INTERNAL REVENUE SERVICE and *
SOCIAL SECURITY ADMINISTRATION, *
                            *
    Defendants.             *
                            *

MEMORANDUM & ORDER

May 4, 2026

TALWANI, D.J.

Pending before the court in this action under the Freedom of Information Act ("FOIA")

are Defendant Social Security Administration's ("SSA") Motion to Dismiss the Complaint or in

the Alternative for Summary Judgment [Doc. No. 24] (the "Motion") and Plaintiff Community

Economic Development Center of Southeastern Massachusetts's ("CEDC") Cross-Motion for

Partial Summary Judgment [Doc. No. 26] (the "Cross-Motion").[1]

SSA contends that its response to CEDC's May 2025 FOIA request mooted CEDC's

Complaint [Doc. No. 1], making it subject to dismissal under Federal Rule of Civil Procedure

12(b)(1) for lack of subject matter jurisdiction. In the alternative, SSA seeks summary judgment

because it has already responded to the FOIA request. CEDC contends that SSA failed to

---

[1] Plaintiff's claims against the Internal Revenue Service are not at issue in the pending motions.

conduct an adequate search for the documents requested in its FOIA Request and seeks partial summary judgment in CEDC's favor.

For the reasons stated herein, SSA's <u>Motion</u> [Doc. No. 24] is DENIED, and CEDC's <u>Cross-Motion</u> [Doc. No. 26] is GRANTED.

## I.    Background

### A.  The New York Times *Reports on SSA's Agreement to Share Addresses*

On April 10, 2025, *The New York Times* reported that SSA had taken certain actions regarding noncitizens' data. <u>See</u> Decl. of Joshua Rosenthal ¶ 2 [Doc. No. 27]; <u>see</u> <u>also</u> <u>id.</u> Ex. A, Alexandra Berzon, et al., <u>Social Security Lists Thousands of Migrants as Dead to Prompt Them to 'Self-Deport'</u>, N.Y. Times, April 10, 2025, at ECF 1 [Doc. No. 27-1], available at

https://www.nytimes.com/2025/04/10/us/politics/migrants-deport-social-security-doge.html (last visited Apr. 28, 2026) (the "*Times* Article"). Citing to "documents" and "interviews[,]" the *Times* Article reported that Leland Dudek, SSA's Acting Commissioner, entered into an agreement with the U.S. Department of Homeland Security ("DHS") in February 2025, under which SSA "would provide the last known addresses of 98,000 people to Immigration and Customs Enforcement[.]" *Times* Article ECF 2–3 [Doc. No. 27-1].

Citing "documents reviewed by *The Times*," the *Times* Article asserted that "immigration officials agreed to send thousands of Social Security numbers to the [SSA], which would match them with personal data and send back associated addresses." <u>Id.</u> at ECF 10. As reported in the *Times* Article,

> Mr. Dudek gave permission to [the Department of Government Efficiency ("DOGE")] engineers and [Immigration and Customs Enforcement ("ICE")] leaders to use his agency's data for law enforcement. . . . Michael Russo, the [SSA's] former chief information officer and a member of [Elon Musk's DOGE] team, also asked for the information to be sent to [DHS] urgently.

Id. at ECF 11.[2]

    *B.  CEDC Submits a FOIA Request to SSA, and SSA Acknowledges Receipt*

On May 30 or 31, 2025, CEDC submitted a FOIA request to SSA via the agency's online

portal, seeking:

> The agreement or agreements reached during or after February 2025 between Social Security Administration and Immigration and Customs Enforcement (or Department of Homeland Security on behalf of Immigration and Customs Enforcement), as reported in the New York Times. See Alexandra Berzon, et al., Social Security Lists Thousands of Migrants as Dead to Prompt Them to 'Self-Deport', N.Y. Times, April 10, 2025.

Mem. ISO Mot. Ex. 1, at ¶ 5 [Doc. No. 25-1] (the "Reagan Declaration"); see Compl. Ex. B, at

ECF 6 [Doc. No. 1-3] (the "FOIA Request"). CEDC also requested a fee waiver and expedited

processing. Reagan Decl. ¶ 5; FOIA Request ECF 6–7 [Doc. No. 1-3].

On Saturday, May 31, 2025, SSA's Office of Privacy and Disclosure ("OPD") sent an

"acknowledgement email" to CEDC regarding the FOIA Request. Reagan Decl. ¶ 6 [Doc. No.

25-1]. The email reported that "upon receipt, FOIA requests are categorized as either simple or

complex, depending on the nature of the request and the estimated processing time." Id. SSA

reports that it placed the FOIA Request "in the appropriate queue for response, behind other

FOIAs pending at the time of the request." Id.

---

[2] Consistent with its title, the primary focus of the *Times* Article was not the alleged address-sharing agreements, but other "documents" reviewed by the newspaper that reportedly revealed that SSA had started adding the names of living individuals to the agency's "death master file" as part of the Trump Administration's immigration enforcement strategy. Id. at ECF 2–3.

### C.  CEDC Files the Pending Action

On July 7, 2025, after its expedited processing request went unanswered,[3] CEDC filed a Complaint [Doc. No. 1] seeking (1) an order directing SSA to produce the requested records without redaction; (2) an award of costs of the proceeding, including reasonable attorneys' fees and other reasonably incurred litigation costs under 5 U.S.C. § 552(a)(4)(E); and (3) "such other relief as the Court deems just and proper." Id. at 6 ¶¶ 1–3.

### D.  SSA Initiates a Search for the Requested Documents

"On or about July 16, 2025, OPD tasked SSA's Office of Data Exchange to search for documents responsive to [the CEDC FOIA Request]." Reagan Decl. ¶ 8 [Doc. No. 25-1]. The Office of Data Exchange is a "centralized office" within SSA "that processes and exercises oversight in all data exchange matters, including data sharing with other federal agencies." Id. ¶ 7 (citing https://www.ssa.gov/dataexchange/).

### E.  The Office of Data Exchange's July 22, 2025 Response to OPD Regarding the FOIA Request

On or about July 22, 2025, the Office of Data Exchange informed OPD that "it had conducted a search for agreements between SSA and Immigration and Customs Enforcement (ICE) responsive to this request and no records were located." Id. ¶ 9. As reported to OPD, the Office of Data Exchange "conduct[ed] a search for agreements by searching its inventory of executed agreements between SSA and ICE or DHS for ICE, from February 1, 2025, to the

---

[3] Federal agencies must adopt regulations "providing for expedited processing of requests for records . . . in cases in which the person requesting the records demonstrates a compelling need[.]" 5 U.S.C. § 552(a)(6)(E)(i). Under SSA's regulations, SSA must "notify the [FOIA] requester within 10 calendar days of receipt of the request for expedited processing of [SSA's] decision to grant or deny expedited processing." 20 C.F.R. § 402.65(b).

search date" and also determined "that no other systems or locations would be reasonably likely to have responsive records." Id. ¶ 10.

F. *SSA's August 11, 2025 Response to CEDC Regarding the FOIA Request*

On August 11, 2025, SSA sent a letter to CEDC responding to the FOIA Request. See Mem. ISO Mot. Ex. 2, at ECF 1 [Doc. No. 25-2] (the "Response Letter"). The letter asserted that "SSA does not have an agreement that covered th[e] arrangement [referred to in the FOIA Request]. Therefore, we have no records responsive to your request." Id. SSA also stated that, because there were no responsive records, CEDC's "requests for expedited processing and a fee waiver are moot." Id.

G. *The Parties Seek Additional Time to Resolve the Matter, and SSA Posts Documents on the Electronic FOIA Reading Room and Produces One Record*

On August 15, 2025, SSA sought an extension of time to September 17, 2025, to respond to CEDC's Complaint [Doc. No. 1], noting that it had advised CEDC on August 11 that it had no responsive records and that "additional time is needed to answer Plaintiff's questions about [SSA's and IRS's] responses to the FOIA request." Assented-to Mot. for Extension of Time [Doc. No. 8].

On September 15, 2025, SSA, through counsel, provided CEDC one document: a letter, dated August 27, 2025, from Mark Steffensen, SSA's Chief of Law and Policy/General Counsel. Mem. ISO Mot. Ex. 3, at ECF 1–2 [Doc. No. 25-3] (the "Steffensen Letter"). The Steffensen Letter responded to ICE's undated "request to obtain from the [SSA] identity and location information concerning aliens in the United States in accordance with the Immigration and Nationality Act (8 U.S.C. § 1360(b))." Id. at ECF 1. The Steffensen Letter stated that, with respect to that request, SSA agreed to do the following:

> On a monthly basis, ICE projects that it will submit to SSA a file concerning approximately 50,000 aliens, that includes the alien's full name, Social Security

number (SSN), alien registration number, date of birth, and address (if available). When SSA identifies a match of submitted information, SSA will provide ICE identity and location information for each requested alien (i.e., known alias(es), address, place of birth, banking data, known phone number(s), known email address(es), names of known relative(s), known internet protocol (IP) address(es). We understand that ICE will use the provided information in a manner consistent with all relevant laws, regulations, and policies and maintain the information in DHS/ICE-011 Criminal Arrest Records and Immigration Enforcement Records (CARIER) System of Records, 89 Fed. Reg. 55638 (July 5, 2024).

Id. The Steffensen Letter also referenced SSA's "understand[ing]" that both SSA and ICE would "provide proper safeguards to the personally identifiable information (PII) exchanged[.]" Id.[4]

On September 16, 2025, pointing to the "responsive record" it sent on September 15, 2025, SSA sought an additional week to "to potentially resolve this matter," or alternatively for SSA to respond to CEDC's Complaint [Doc. No. 1]. Assented-to Mot. for Extension of Time 1 [Doc. No. 14].

On September 24, 2025, the parties jointly moved for an additional two weeks for "the parties to potentially resolve remaining inquiries from Plaintiff regarding a full search for

---

[4] The letter was subsequently posted to SSA's Electronic FOIA Reading Room on September 17, 2025. See Proactive Disclosures (Last Year and Older), Soc. Sec. Admin. Elec. FOIA Reading Room, https://www.ssa.gov/foia/readingroom.html [https://perma.cc/489C-Z9NT] (last visited May 1, 2026); DHS Letter 1360b 8.27.25_Redacted, Soc. Sec. Admin. Elec. FOIA Reading Room (Aug. 27, 2025), https://www.ssa.gov/foia/resources/proactivedisclosure/2025/DHS%20Letter%201360b%208.27.25_Redacted.pdf (Sept. 17, 2025) (last visited Apr. 26, 2026).

The court takes judicial notice of this website and the documents SSA has made publicly available there. See Gent v. CUNA Mut. Ins. Soc., 611 F.3d 79, 84 n.5 (1st Cir. 2010) (where the district court and the parties cited the Center for Disease Control and Prevention's website "as authoritative[,]" the First Circuit, on review of a grant of summary judgment, took "judicial notice of the relevant facts provided on the website, which are 'not subject to reasonable dispute'" (quoting Fed. R. Evid. 201(b)); Laborers' Pension Fund v. Blackmore Sewer Const., Inc., 298 F.3d 600, 607 (7th Cir. 2002) (taking judicial notice of information on a private bank's website and on the Federal Deposit Insurance Corporation's website as "matters of public record").

responsive records to its request" or for SSA to respond to CEDC's Complaint [Doc. No. 1].

Joint Mot. for Extension of Time 1 [Doc. No. 17].

On September 26, 2025, counsel for CEDC emailed SSA's counsel to propose search

parameters that SSA could undertake to respond to the FOIA Request. See Rosenthal Decl. Ex. 2

[Doc. No. 27-2] (the "September 26, 2025 Email"). CEDC specifically requested:

> A production of all exchanges leading up to the August 27 letter, as well as subsequent communications regarding the letter–including at a minimum the ICE request referenced in the letter;
>
> Records of communications regarding requests for data and responses from ICE/[DHS][5] that was the subject of the earlier NY Times article cited in the FOIA request. These communications may exist as emails, memoranda, transcribed messages, letters, etc. and the NY Times article described the agreement as having come from former Acting Commissioner Dudek himself and it therefore may be located in his records or correspondence. . . .[;]
>
> A list of the places where the SSA conducted its search for responsive records, including for the items . . . above, any search terms or other methods used to conduct the search, and the personnel involved, by title.

Id.

### H. The Case is Stayed During the Government Shutdown, and SSA Does Not Resume Its Search When the Stay is Lifted

The appropriation act funding the U.S. Department of Justice expired at the end of the

day on September 30, 2025, and, one week later, SSA moved to stay its responsive pleading

deadline until Congress restored appropriations. Assented-to Mot. for Stay of Briefing 1–2 [Doc.

No. 19]. The court granted the requested relief. Elec. Order [Doc. No. 20].

Funding was restored, effective November 13, 2025. Notice [Doc. No. 21]. SSA does not

aver that it ever responded to CEDC's September 26, 2025 Email [Doc. No. 27-2] and has not

---

5 The email referenced "ICE/HLS." Id. CEDC asserts that this was a typographical error and that the intended acronym was inferable from the context. Mem. ISO Cross-Mot. 4 n.2 [Doc. No. 28]. The court agrees, particularly where SSA never asked for a clarification.

7

submitted anything to the court that indicates otherwise. See Reagan Decl. ¶¶ 5–16 [Doc. No. 25-1]. Instead, on November 21, 2025, SSA filed the pending Motion [Doc. No. 24].

## II.    Discussion

### A.    Statutory Background and Application

In enacting the FOIA in 1966, Congress "sought 'to open agency action to the light of public scrutiny.'" U.S. Dep't of Just. v. Tax Analysts, 492 U.S. 136, 142 (1989) (quoting U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press, 489 U.S. 749, 772 (1989)). "Congress did so by requiring agencies to adhere to a general philosophy of full agency disclosure. . . . believ[ing] that this philosophy, put into practice, would help ensure an informed citizenry, vital to the functioning of a democratic society." Id. (quotations omitted).

Under the FOIA, this court "has jurisdiction to enjoin [an] agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). Except with respect to feasibility questions not at issue here, the FOIA directs the court to "determine the matter de novo[.]" Id.

"[T]he adequacy of an agency's search for documents under FOIA is judged by a standard of reasonableness." Mullane v. U.S. Dep't of Just., 113 F.4th 123, 130–31 (1st Cir. 2024) (quoting Church of Scientology Int'l v. U.S. Dep't of Just., 30 F.3d 224, 230 (1st Cir. 1994)). The critical issue for the court "is not whether relevant documents might exist, but whether the agency's search was 'reasonably calculated to discover the requested documents.'" Maynard v. CIA, 986 F.2d 547, 559 (1st Cir. 1993) (quoting SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1201 (D.C. Cir. 1991)).

"The government bears the initial burden of showing that it conducted an adequate search." Moffat v. U.S. Dep't of Just., 716 F.3d 244, 254 (1st Cir. 2013); see Tax Analysts, 492 U.S. at 142 n.3 (on review of a motion to dismiss, stating that "[t]he burden is on the agency to

demonstrate, not the requester to disprove, that the materials sought are not agency records or have not been improperly withheld" (quotations omitted)); Aguiar v. Drug Enf't Admin., 865 F.3d 730, 735 (D.C. Cir. 2017) (applying the burden rule from Tax Analysts on review of a district court's grant of summary judgment). The government must "establish that it has 'made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.'" Oleskey ex rel. Boumediene v. U.S. Dep't of Def., 658 F. Supp. 2d 288, 294 (D. Mass. 2009) (quoting Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990)).

An agency may make the requisite showing through affidavits, provided such affidavits "are relatively detailed and nonconclusory, and are submitted by responsible agency officials in good faith." Maynard, 986 F.2d at 559. "A satisfactory agency affidavit should, at a minimum, describe in reasonable detail the scope and method by which the search was conducted." Id. The affidavit should also "describe at least generally the structure of the agency's file system which makes further search difficult." Id. (quotation omitted).

If an agency fails to establish through affidavits that it conducted a reasonable search, a "FOIA requester may avert summary judgment merely by showing that the agency might have discovered a responsive document had the agency conducted a reasonable search." Id. at 560 (citing Weisberg v. U.S. Dep't of Just., 705 F.2d 1344, 1351 (D.C. Cir. 1983)). If the agency does make such a showing, however, a FOIA requester "can rebut the agency's affidavit only by showing that the agency's search was not made in good faith." Id. (citing Miller v. U.S. Dep't of State, 779 F.2d 1378, 1383 (8th Cir. 1985)). The court "must generally afford a presumption of good faith to agency affidavits." Mullane, 113 F.4th at 131 (cleaned up) (quotation omitted).

### B.  SSA's Rule 12(b)(1) Mootness Challenge

A case is moot where it is "impossible for a court to grant any effectual relief whatever to the prevailing party." Chafin v. Chafin, 568 U.S. 165, 172 (2013) (quoting Knox v. Serv. Employees Int'l Union, Local 1000, 567 U.S. 298, 307 (2012)). The mootness review is grounded in "[t]he case or controversy requirement [and] ensures that courts do not render advisory opinions." Overseas Military Sales Corp. v. Giralt-Armada, 503 F.3d 12, 16–17 (1st Cir. 2007). "But as long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." Ellis v. Bhd. of Ry., Airline & S.S. Clerks, Freight Handlers, Express & Station Emps., 466 U.S. 435, 442 (1984). Moreover, "[t]he burden of establishing mootness rests squarely on the party raising it, and '[t]he burden is a heavy one.'" Mangual v. Rotger-Sabat, 317 F.3d 45, 60 (1st Cir. 2003) (quoting United States v. W.T. Grant Co., 345 U.S. 629, 633 (1953)).

Here, SSA's response to the CEDC FOIA Request on August 11, 2025, did not render CEDC's Complaint [Doc. No. 1] moot or otherwise divest this court of subject matter jurisdiction. See Fed. R. Civ. P. 12(b)(1). The FOIA, in relevant part, vests jurisdiction in federal district courts as follows:

> On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action.

5 U.S.C. § 552(a)(4)(B). Under this statutory provision, "federal jurisdiction is dependent upon a showing that an agency has (1) 'improperly'; (2) 'withheld'; (3) 'agency records.'" Kissinger v. Reps.' Comm. for Freedom of the Press, 445 U.S. 136, 150 (1980) (quoting 5 U.S.C.

10

§ 552(a)(4)(B)). If an agency "has contravened all three components of this obligation," a court may invoke its "[j]udicial authority to devise remedies and enjoin agencies[.]" Id.

In bringing its mootness challenge, SSA effectively argues that the mere provision of a response to a FOIA request by an agency automatically satisfies the agency's obligations under the FOIA and strips district courts of their statutory jurisdiction. But such a limited view of the jurisdiction conferred by 5 U.S.C. § 552(a)(4)(B) is erroneous, as the court must retain the ability to review the agency's FOIA response to determine in the first instance whether the agency has "(1) improperly; (2) withheld; (3) records[,]" Kissinger, 445 U.S. at 150 (quotations omitted), and, by extension, the court's jurisdiction over the case before it. See Brownback v. King, 592 U.S. 209, 218–19 (2021) ("[A] federal court always has jurisdiction to determine its own jurisdiction[.]" (quoting United States v. Ruiz, 536 U.S. 622, 628 (2002))).

Accordingly, the court rejects SSA's attempt to dismiss the Complaint [Doc. No. 1] under Rule 12(b)(1) and will instead evaluate the summary judgment record to evaluate whether SSA has or has not satisfied its FOIA obligations.

C. SSA's Motion for Summary Judgment

SSA seeks summary judgment on the grounds that it conducted its search, informed Plaintiff that it identified no responsive records, and provided Plaintiff with the Steffensen Letter [Doc. No. 25-3]. See Mem. ISO Mot. 6–8 [Doc. No. 25]. Plaintiff responds that SSA has not shown that it conducted an adequate FOIA search for responsive records. See Mem. ISO Cross-Mot. 6–10 [Doc. No. 28]. On review of the record, the court finds that SSA has failed to meet its burden to demonstrate that it performed an adequate search.

1. The Reagan Declaration

SSA's Motion [Doc. No. 24] relies on the assertions in the Reagan Declaration [Doc. No. 25-1] as to the adequacy of the search conducted. See Mem. ISO Mot. 6–7 [Doc. No. 25]. The

11

court finds the declaration inadequate to establish that SSA's search in response to the FOIA Request was "reasonably calculated" to discover the records sought by CEDC. Maynard, 986 F.2d at 559 (quotation omitted).

First, the Reagan Declaration [Doc. No. 25-1] does not permit a finding that SSA's decision to limit its search solely to the Office of Data Exchange was a reasonable, or even nonarbitrary, search parameter in response to the FOIA Request. As to this decision, the declaration states only that

> SSA has a centralized office, the Office of Data Exchange, that processes and exercises oversight in all data exchange matters, including data sharing with other federal agencies. . . . This Office is the sole component reasonably likely to possess responsive records to the request.

Reagan Decl. ¶ 7 [Doc. No. 25-1]; see id. ¶¶ 8–9 (stating that OPD "tasked" the Office of Data Exchange with searching for responsive records "on or about July 16, 2025[,]" and was informed by that office six days later that "no records were located."). The declaration is silent as to how or why the SSA reached this conclusion or the extent to which SSA considered other possible repositories of responsive records, if the agency did so at all. There is also no explanation as to why SSA did not search documents held by Acting Commissioner Dudek, who is quoted throughout the *Times* Article referenced in the FOIA Request as the decisionmaker for the requested "agreement or agreements" and the recipient and sender of communications associated therewith. FOIA Request ECF 6 [Doc. No. 1-3]; accord Am. Civ. Liberties Union of Mass., Inc. v. U.S. Immigr. & Customs Enf't, 448 F. Supp. 3d 27, 43 (D. Mass. 2020).

Regarding the actual search performed, the description of SSA's search of the records within the Office Data Exchange offered by the Reagan Declaration [Doc. No. 25-1] lacks the requisite "reasonable detail" as to "the scope and method by which the search was conducted." Maynard, 986 F.2d at 559. The declaration, for example, states that, on or about July 22, 2025,

12

the Office of Data Exchange "reported conducting a search for agreements by searching its inventory of executed agreements between SSA and ICE or DHS for ICE, from February 1, 2025, to the search date." Reagan Decl. ¶ 10 [Doc. No. 25-1]. But, beyond the time period covered, the basic contours of this search, such as the search terms used or any information regarding the Office of Data Exchange's file structure or data storage practices, are not disclosed. See Maynard, 986 F.2d at 559; Oleskey ex rel. Boumediene, 658 F. Supp. 2d at 294 ("Sufficient details in government affidavits may include 'setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials were searched.'" (cleaned up) (quoting Iturralde v. Comptroller of Currency, 315 F.3d 311, 313–14 (D.C. Cir. 2003))).

SSA also narrowed the scope of the FOIA Request from "[t]he agreement or agreements reached during or after February 2025" between SSA and ICE, or DHS on ICE's behalf, FOIA Request ECF 6 [Doc. No. 1-3] (emphasis added), to "executed agreements between SSA and ICE or DHS for ICE" between February 1, 2025, and the date of the agency's search, Reagan Decl. ¶ 10 [Doc. No. 25-1] (emphasis added). The Reagan Declaration [Doc. No. 25-1] does not define the term "executed agreement" as used by SSA and, critically, offers no explanation as to why SSA circumscribed the FOIA Request in this manner, particularly where the language of that request makes no mention of "executed agreements" and does not describe the requested "agreement or agreements" in any way indicative of such a limitation. See FOIA Request ECF 6 [Doc. No. 1-3]; Reagan Decl. ¶ 5 [Doc. No. 25-1]. Where CEDC "reasonably describe[d]" the records sought, 5 U.S.C § 552(a)(3), SSA's decision to limit its search, without explanation, is inconsistent with the agency's "duty to construe a FOIA request liberally." Johnson v. CIA, 330 F. Supp. 3d 628, 642 (D. Mass. 2018) (quoting Nation Magazine v. U.S. Customs Serv., 71 F.3d

885, 890 (D.C. Cir. 1995)); see Truitt v. Dep't of State, 897 F.2d 540, 544–45 (D.C. Cir. 1990) (replacement in 1974 of the FOIA's "request for identifiable records" language with "request for records which . . . reasonably describes such records" language "makes explicit the liberal standard for identification that Congress intended and that courts have adopted[.]" (quoting S. Rep. No. 93-854, 93d Cong., 2d Sess. 5–6, 10 (1974))).

Moreover, where SSA obtained additional time to respond to the Complaint [Doc. No. 1] in part to try to resolve the matter with CEDC, as discussed supra, the Reagan Declaration's [Doc. No. 25-1] silence regarding the search parameters proposed by CEDC during that extension period underscores SSA's failure to conduct a reasonable search.

2.  SSA's Additional Disclosures

SSA argues further that it "went beyond its FOIA obligations." Mem. ISO Mot. 8 [Doc. No. 25]. SSA's further disclosures, however, do not render the agency's search in response to the FOIA Request adequate.

First, SSA points to its September 15, 2025 disclosure of the Steffensen Letter [Doc. No. 25-3], which "described an arrangement under which SSA would disclose records to ICE." Reagan Decl. ¶ 15 [Doc. No. 25-1]. But that disclosure is not remarkable where SSA has previously identified the letter as a "responsive record," see Assented-to Mot. for Extension of Time 1 [Doc. No. 14], and the document was issued prior to SSA's deadline, as extended by the court, for responding to the Complaint [Doc. No. 1]. If anything, the letter underscores the improper limitations of the search that was conducted by SSA, where this communication, although evidencing an agreement, is not an "executed agreement."

Second, SSA points to documents the agency posted to its Electronic FOIA Reading Room on July 17, 2026, that relate to SSA's classification of immigrants as deceased in SSA records, a subject of the *Times* Article. See Mem. ISO Mot. 8 [Doc. No. 25]; see also Reagan

14

Decl. ¶ 16 [Doc. No. 25-1]. But as SSA itself notes, that "topic is outside of any SSA agreements reached with ICE." Mem. ISO Mot. 8 [Doc. No. 25]. Public disclosure of the documents concerning the classification of immigrants as deceased does not make SSA's response to the FOIA Request seeking "agreements" between SSA and ICE or DHS on behalf of ICE sufficient.

In sum, Defendant has failed to meet its burden to demonstrate an adequate search for responsive documents.[6]

### D. CEDC's Cross-Motion for Partial Summary Judgment

In its memorandum in support of its Cross-Motion [Doc. No. 26], CEDC asks that the court:

> determine that SSA's search was inadequate, grant partial summary judgment in [CEDC's] favor, retain jurisdiction over the case, and order SSA to search the files and communications of former Acting Commissioner Dudek, as well as any other locations reasonably likely to hold responsive records.

Mem. ISO Cross-Mot. at 10 [Doc. No. 28]; see id. at 5 (CEDC "seek[s] a determination that SSA has not met its obligations under FOIA to conduct a reasonable search for the requested records and [that the court] order[] the agency to conduct such a search and produce the records.").

---

[6] Citing to NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214 (1978), a case in which an employer facing an NLRB hearing filed a FOIA Request seeking copies of all potential witness statements collected during NLRB's investigation of the employer, and a related case pending before the court, see CEDC et al. v. Bessent et al., No. 25-cv-12822-IT (D. Mass.), SSA also "note[s] that [CEDC] has separately sued SSA related to the records it seeks here. . . . However, FOIA is not intended to be a means of discovery." Mem. ISO Mot. 9 n.2 [Doc. No. 25]. The court rejects the notion that CEDC should have refrained from seeking government records under the FOIA in light of its related action against SSA. See State of Maine v. U.S. Dep't of Interior, 298 F.3d 60, 66 (1st Cir. 2002) ("FOIA was not designed to supplement the rules of civil discovery, and a requester's right to obtain information is neither enhanced nor diminished because of its needs as a litigant." (emphasis added) (quotation omitted)).

15

Having found that SSA has failed to meet its burden to demonstrate an adequate search for responsive documents, and where SSA has filed no opposition to the Cross-Motion [Doc. No. 26], the court grants CEDC the requested relief.

## III.    Conclusion and Order

For the foregoing reasons, the Reagan Declaration [Doc. No. 25-1] does not provide a basis on which the court may conclude that SSA reasonably identified and searched all appropriate locations in response to the FOIA Request. Therefore, SSA has not met its "burden of showing that it conducted an adequate search." Moffat, 716 F.3d at 254.

Accordingly, Defendant SSA's Motion to Dismiss the Complaint or in the Alternative for Summary Judgment [Doc. No. 24] is DENIED. Plaintiff CEDC's Cross-Motion for Partial Summary Judgment [and Opposition to Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment] [Doc. No. 26] is GRANTED as follows:

Within fifteen days, SSA shall:

(1) Conduct an adequate search for the documents sought in the FOIA Request, namely "[t]he agreement or agreements reached during or after February 2025 between Social Security Administration and Immigration and Customs Enforcement (or Department of Homeland Security on behalf of Immigration and Customs Enforcement)" regarding the sharing of addresses as reported in the New York Times, see Alexandra Berzon, et al., Social Security Lists Thousands of Migrants as Dead to Prompt Them to 'Self-Deport', N.Y. Times, April 10, 2025, including any informal agreements or writings documenting informal or formal agreements, and all exchanges leading up to the Steffensen Letter, as well as subsequent communications regarding the Steffensen Letter, including, at a minimum, the ICE request to which the Steffensen Letter refers;

(2) inform CEDC, in writing, of its findings. At a minimum, SSA shall indicate in its response the scope and method of its search, including the specific databases, files, or other repositories of information searched; the search terms used; and an explanation of how the agency selected such terms; and

(3) if SSA continues to maintain that the Office of Data Exchange, is the "sole component reasonably likely to possess responsive records to the request[,]" a reasonably detailed explanation of why SSA has taken this position and what other

agency components or offices were considered, but rejected, as sources for the requested search.

IT IS SO ORDERED.

May 4, 2026                                    /s/ Indira Talwani
                                              United States District Judge